relator to state in what sum he should be assessed, or to make any statement as to the value of his property, are not a compliance with Laws 1851, c. 176, as amended by Laws 1857, c. 536, requiring the relator to submit to an examination, and providing that on his refusal to answer questions under oath as to the value of his estate, the assessors shall not reduce the assessment, so as to entitle the relator to a writ of *certiorari* under Laws 1880, c. 269, allowing such writ where an assessment is illegal or erroneous.

Appeal from special term, Orange county.

Application of John E. Corwin for a writ of *certiorari* directed to C. C. V. Ketcham, C. K. Gordon, and J. J. Duryea, assessors of the city of Middletown, and Frank Harding, clerk of said city, requiring them to review their action as tax assessors, etc. From an order granting a reference to take proof as to the assessment of relator's property, the said Ketcham and the others appeal. Reversed.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Geo. H. Decker,* for appellants.   *William Vanamee,* for respondent.

BARNARD, P. J.   By chapter 269, Laws 1880, a writ of *certiorari* is provided for when an assessment is illegal or erroneous by reason of overvaluation, or because the assessment is disproportioned to the assessment of other real and personal property.   The words of this act are extremely general, and on their face seem to authorize a writ of *certiorari* to review the assessment without the aggrieved party applying to the assessor to correct the error. The court of appeals, in the case of *People* v. *Commissioners of Taxes,* 99 N. Y. 254, 1 N. E. Rep. 773, restricts the act of 1880 to cases where there was a failure by the assessors to correct the assessment roll.   The principle is again applied in *People* v. *Adams,* 125 N. Y. 471, 26 N. E. Rep. 746.   Unless the relator did what he was required to upon grievance day, the law of 1880 does not apply to him.   He did not personally appear, but did appear by attorney only.   The attorney filed his affidavit that the assessment was illegal and unjust.   The assessors asked the attorney if his client did not own $10,000 in personal property, which was the amount assessed against him, and the attorney admitted for the sake of the argument that his client was worth $75,-000.   No proof was offered, and upon a personal application to the relator he refused to state in what sum he should be assessed, or to make any statement as to the value of his property.   What the relator should have done is provided for by chapter 176, Laws 1851, as amended by chapter 536, Laws 1857. The relator was to apply.   It was then the duty of the assessors to examine him on oath.   Then the assessors were to hear other supplementary evidence under oath, to be presented by relator.   If the relator refuses to answer questions as to the value of the estate under oath, or present sufficient evidence under oath to justify a reduction, the assessors "shall not reduce the value of such real or personal estate."   The examination of relator and of the supplementary evidence is to be taken down, signed, and filed in the town clerk's office.   An offer to submit to an examination when the party is not present was of no effect.   The assessors, therefore, had no power to reduce the assessment upon the case made solely upon the affidavit of the attorney.   The order should therefore be reversed, with costs and disbursements, and the motion to quash the writ be granted, with costs.   All concur.

---

## VAN WAGENER *v.* ROYCE *et al.*

*(Supreme Court, General Term, Second Department.   May 9, 1892.)*

EQUITY—LACHES.

Prior to a foreclosure sale of real estate, plaintiff and defendants' intestate agreed in writing, under seal, that the latter should pay to plaintiff and others $3,000 for their interest in the mortgaged premises, and that the sale should be postponed; whereupon plaintiff quitclaimed his interest.   The property was purchased on the

adjourned day of sale by one of the parties to the agreement, and conveyed to decedent, who paid $1,200 to such party, none of which was received by plaintiff, who, after the agreement, had been compelled to pay certain moneys which were by its terms to be paid by decedent. *Held,* that plaintiff's delay in asserting his claim for seven years, which he was not asked to explain, while an unfavorable fact, was not conclusive against its validity; and as the mistake of description in plaintiff's conveyance, which defendants claimed was a failure of performance on his part, could have been easily corrected so as to include the whole property, the payment to plaintiff would be equitable, and within the meaning of the agreement, and under the circumstances the court would not deem the agreement abandoned, but would enforce it in plaintiff's favor.

Appeal from judgment on report of referee.

Action by Cornelius A. Van Wagener against William B. Royce and others, administrators with the will annexed of Henry R. Low, deceased, on an agreement for the payment of certain moneys. From a judgment for plaintiff, and an order confirming the referee's report, defendants appeal. Affirmed.

Argued before DYKMAN and PRATT, JJ.

*B. F. Low,* for appellants. *Greene & Bedell,* for respondent.

DYKMAN, J. The plaintiff in this action presented a claim for $1,100 against Henry R. Low, deceased, to his administrators with the will annexed, which they rejected. A reference was thereupon made under the statute, and the referee reported in favor of the plaintiff for the full amount of his claim. Judgment was duly entered upon the report, and the defendants have appealed therefrom.

The claim was based upon an agreement in writing, under seal, between Jesse C. Hansee, C. A. Van Wagener, the plaintiff, and Henry R. Low, dated on the 2d day of December, 1881. The writing seems to have been signed by M. E. Hansee also. The agreement was this:

"It is agreed by and between the undersigned, Jesse C. Hansee, C. A. Van Wagener, and Henry R. Low, as follows: *First.* That the mortgage sale of the Sam's Point property shall be postponed to the sixteenth day of December, 1881, without prejudice to either party. *Second.* H. R. Low will pay the sum of $3,000 in full settlement of all claims which Jesse C. Hansee, Margaretta Hansee, and said C. A. Van Wagener, representing himself and Gertrude Chipp, have against the said Sam's Point property, which property is the same property advertised to be sold under a decree of sale made on the fifteenth day of October, 1881, before Judge Barnard, and is intended to include all the right, title, and interest which each of the parties have in said property, and all costs and attorneys' fees, printers' fees, and other costs and charges relating to said sale and foreclosure; also the mortgage of $300 given heretofore to William J. Groo, now held by Henry C. Duryea, receiver. *Third.* The said Low is to cause all suits and judgments against Marryetta Hansee, Jesse C. Hansee, and said C. A. Van Wagener growing out of the litigations relating to said property to be withdrawn and canceled, such judgments and suits being the following: *First,* the suit and judgment of Maryetta Hansee against Thomas Botsford and Adele Van Gorder; *second,* judgment in matter of Sackett L. Duryea against Thomas Botsford; *third,* suit of Van Wagener and Elliott against Thomas Botsford and said Jesse C. Hansee to assign to said Low the said judgment against William J. Groo. All said interest of said parties above named in the said mortgaged premises, and in the road leading to the same owned by said Hansee, shall be conveyed clear of incumbrances. Of the sum of $3,000, the sum of $500 is to be paid to said Van Wagener, and the principal sum and interest on the same due Gertrude Chipp, but not attorneys' fees; the balance of it to be paid Jesse C. Hansee. The suit of C. A. Van Wagener and Maria A. Elliott against Thomas Botsford to be settled and discharged as above provided. The said Low is to pay J. C. Hansee fifty dollars, to pay receiver and attorneys' fees in case against

Groo.  The payment to be made on December 16, 1881, on delivery of the various deeds and transfers mentioned, at Kingston, New York.  Sealed and dated December 2, 1881.        H. R. Low.        [L. s.]
                                      "Jesse C. Hansee.    [L. s.]
                                      "M. E. Hansee.       [L. s.]
                                      "C. A. Van Wagener.  [L. s.]"

In pursuance of an understanding between the parties to that agreement, the plaintiff and his wife executed and delivered to John G. Gray a quitclaim deed of all their interest in the property designated in the agreement.  That deed was dated December 3, 1881, and on the 24th day of January, 1882, John G. Gray and his wife executed and delivered to Jesse C. Hansee a quit-claim deed of the same property.  On the 16th day of December, 1891, the property was sold under the judgment of foreclosure, and Jesse C. Hansee became the purchaser and received the deed from the referee.  On the 7th day of February, 1882, in pursuance of the agreement, Jesse C. Hansee, with his wife, executed and delivered a deed of the premises to Henry R. Lowe, who accepted and recorded the same.  At the time of the execution and delivery of the deed from Hansee to Low the latter paid the former $1,200, but no part of that money came to the plaintiff.  Low did not pay to the plaintiff the sum of $500, as he was to do under the agreement.  Low did not pay the judgment of Van Wagener and Elliott against Thomas Botsford, nor cause the same to be canceled, as he undertook to do in the agreement, and the plaintiff was compelled to pay $600 to the attorney of Botsford in that action by reason of such neglect of Low.  When the agreement was made the property was advertised to be sold the next day under the judgment in foreclosure.  Thomas Botsford had given the mortgage which was in process of foreclosure, and he claimed some interest in the property and was in possession.  The plaintiff in this action, William J. Groo, and Jesse C. Hansee each claimed an interest in the property, and the purpose of the agreement was to concentrate and settle those conflicting interests and claims, and the sale was adjourned to afford time for the consummation of such designs.  The plaintiff made a quitclaim deed of his interest in the property to Gray, and he in turn made a quitclaim deed to Hansee, but he neither paid nor received any money; and now the plaintiff claims that an action has accrued to him against Low by virtue of the agreement, to the extent of $1,100.  On the other hand, the defendants claim that the agreement was abandoned; that it was found to be impractical to carry out the designs of the parties; and the sale took place as if the agreement had not been made.  A careful examination of the case discloses circumstances in favor of the contention of both sides.  The great delay in the prosecution of the plaintiff's claim is an unfavorable fact, but not conclusive against its validity.  Then, again, when Hansee bid off the property, his bid was $1,405, and when Low took the conveyance from Hansee he only paid $1,200, and agreed to reconvey upon repayment of that sum, and Hansee paid $205 for the costs out of his own pocket, and it is claimed that his conveyance did not include the whole property.  These are strong circumstances in favor of the defendants, and cause much hesitation.  Yet it is to be said on the other hand that Low agreed to pay $3,000 in settlement of the claims of the plaintiff, representing himself and Gertrude Chipp, and that her claim was paid from the money received from Low.  The plaintiff did make a conveyance of his interest in the property which eventually became vested in Low, and, if his conveyance failed to include all the property, it was no fault of the plaintiff, and seems to have been, at most, but the result of a mistake, which could have been corrected by Low at any time.  The agreement of Low to reconvey was with Hansee, and could not affect the rights of the plaintiff under the agreement.  Moreover, the deed invested him with title, and it could only be declared a mortgage at the instance of one of the parties, and no move-

v.19 N.Y.s.no.1—10

ment was ever made in that direction. If the plaintiff paid $600 for his own protection to retire the suit of Botsford, it was for protection which Low agreed to furnish, and if he pays that sum and the $500 he will pay no more than he undertook to pay by the agreement, and if the plaintiff does not recover his claim here he will lose all, as his interest in the property has passed to Low. There is no proof of the abandonment of this agreement, and the payment of the claim of Gertrude Chipp with money received from Low was in pursuance of its provisions. Moreover, it is by no means certain that his conveyance from Hansee does not include all of the property. Under all the circumstances, we think the ends of justice will be attained by an affirmance of this judgment. Judgment affirmed, with costs.

PRATT, J. We think the testimony of Hansee shows that, as between him and Low, the deed had somewhat the character of a mortgage, and that Low was to reconvey upon being made good the amount of his investment. We do not find evidence that Hansee was bound to reimburse Low. It may well be that Hansee had an option without being under obligation to Low. But, if we assume that to be the situation, we do not see that it affects the rights of the parties here. Hansee did not repay Low, and the statute of limitations is now a bar to his right to claim a reconveyance. The property which the plaintiff parted with became vested in Low, and now is a part of his estate. If plaintiff was aware that Low was acting as a friend of Hansee, not primarily seeking his own benefit, that may explain why he rested seven years without enforcing his rights. In this connection it is fair to mention that he was not called on for an explanation of the delay. It may well be that such explanation, if called for, would have been ample; and Judge Groo, who is one of the administrators of Mr. Low, and who was a party to the agreement sued on, did not testify in the cause, which he surely would have done if his evidence would have been useful to defendants. Upon the whole case, we are of opinion that the judgment should be affirmed, without costs.